# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

SHAUN STEELE,                   )

                         )

           Plaintiff,       )

                         )

        vs.              )    Case No. 1:13-cv-01045-TWP-DKL

                         )

WENDY KNIGHT Superintendent and   )

MATTHEW JOHNSON, Internal Affairs,   )

                         )

         Defendants.     )

## ENTRY ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on the parties' cross-motions for Summary Judgment and Plaintiff Shaun Steele's ("Mr. Steele") Motion for Preliminary Injunction. For the reasons explained below, the Defendants' Request for Summary Judgment (Dkt. 72) is **GRANTED** because they are entitled to qualified immunity and Mr. Steele's Motion for Partial Summary Judgment (Dkt. 65) and Preliminary Injunctive Relief (Dkt. 83) are **DENIED.**

Mr. Steele, an Indiana prisoner, brings this action under 42 U.S.C. § 1983 against Superintendent Wendy Knight ("Superintendent Knight") and Matthew Johnson ("Mr. Johnson") (collectively "Defendants"). Defendants are employees of the Correctional Industrial Facility ("CIF"). Mr. Steele alleges that while incarcerated at CIF, he was denied access to the courts.[1] (See Dkt. 6). Specifically, he contends that the closure of CIF's law library for more than a month frustrated and impeded 1) his post-conviction appeal transfer, and 2) the civil complaint that he

---

[1] Mr. Steele argues in his reply brief that he has also alleged an Equal Protection Claim. He is mistaken. No viable equal protection claim was raised in the amended complaint and Mr. Steele cannot raise a new claim during the course of his summary judgment briefing.

had against Menards.[2] In response, the defendants' filed a cross motion for summary judgment. Defendants argue, among other things, that they are entitled to qualified immunity because they did not violate any clearly established constitutional rights.

## I.  <u>STANDARD OF REVIEW</u>

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not

---

[2] To the extent that Mr. Steele seeks relief based on a civil action in small claims court against Wendy Knight for reading his legal work, no relief is warranted on this basis. Mr. Steele admits that he was successful in his small claims action and achieved a favorable damages settlement. (See Dkt. 66 at p. 4).

required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.,* 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir.1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial ... against the moving party." *Celotex,* 477 U.S. at 330.

Consistent with the foregoing, the following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Steele as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

## II. MATERIAL FACTS

### A. Mr. Steele's Petition for Post-Conviction Relief

In July 2010, Mr. Steele was charged with, among other charges, receiving stolen property as a class C felony, which was enhanced due to a prior auto theft conviction, and being a habitual offender; Mr. Steele eventually pleaded guilty to these charges, admitting he had an unrelated prior auto theft conviction and previous felony convictions for robbery and escape. ("Memorandum Decision – Not for Publication" in *State v. Steele*, No. 20A03-1111-PC-503 at 2-3.)

On October 14, 2010, Mr. Steele was sentenced to eight years for the receiving stolen property conviction, a sentence which was enhanced by an additional eight years due to his status as a habitual offender (with two years suspended).

In April 2011, Mr. Steele filed a Petition for Post-Conviction Relief in the Elkhart Superior Court, bringing eight challenges to his convictions and one to his sentence, contending that his trial counsel was ineffective for not objecting to an improper double enhancement. The Elkhart Superior Court granted Mr. Steele's Petition in part, determining that his ineffective assistance of counsel claim was correct as to the double enhancement, and denied it in part as to his remaining arguments. The State of Indiana subsequently appealed that decision to the Indiana Court of Appeals. On appeal, Mr. Steele filed a Motion to Dismiss, which was denied; an Appellee/Cross-Appellant's Brief, in which Mr. Steele cross-appealed the trial court's denial of his other grounds for relief; and an Appellee/Cross-Appellant's Reply Brief. Mr. Steele was not represented by counsel on this appeal; as such, he did his own research and wrote his own briefs.

On October 18, 2012, the Court of Appeals issued a Memorandum Decision that was Not for Publication affirming in part and reversing in part the Elkhart Superior Court's decision on Mr. Steele's Petition for Post-Conviction Relief. In that decision, the Court of Appeals found Mr. Steele's case to be "virtually the same" as the situation in *Davis v. State*, 935 N.E.2d 1215 (Ind. Ct. App. 2010), a decision issued two weeks before Mr. Steele's sentencing in which the court held that the appellant's sentence was not improperly enhanced because the trial court did not use the same conviction to enhance under both the progressive enhancement and habitual offender statutes.

The court declared its *Davis* holding "equally applicable" to Mr. Steele, concluding that "[t]his was the law at the time Steele's sentence was imposed and Steele's sentence was perfectly

consistent with it. Obviously, Steele's counsel did not render deficient performance in failing to register an objection to a sentence that was lawful at the time." (Dkt. 72-4 at 9). Accordingly, the Court of Appeals held that Mr. Steele did not receive ineffective assistance of counsel on the double enhancement issue and that the trial court committed clear error in granting Mr. Steele's petition on this issue. Regarding Mr. Steele's cross-appeal, the Court of Appeals affirmed the trial court's denial of the other claims advanced in Mr. Steele's petition. (Dkt. 72-4 at 9-16). Any petition to transfer to the Indiana Supreme Court was due on November 17, 2012.

Mr. Steele worked as a law clerk in CIF's Law Library for about five months in 2011. Mr. Steele knew that, to exhaust his state remedies, he needed to file a Petition to Transfer to the Supreme Court. Mr. Steele fully expected that he would have thirty days to file a Petition to Transfer.

**B. Closure of CIF's Law Library**

From October 25, 2012 to November 25, 2012, Superintendent Knight temporarily suspended all access to CIF's Law Library. A forged commissary receipt prompted the Law Library review such that "each individual computer was checked for any unauthorized material, programs or the like. The computers were then wiped cleaned and started fresh, which took some time". (Dkt. 67-23 p. 6). During this period, Mr. Steele had access to hard copies of the Appendix, Appellee's Brief, and the Appellant's Brief that were filed in the Indiana Court of Appeals concerning his Petition for Post-Conviction Relief. Mr. Steele covered all the issues that would have been in a Petition to Transfer in the briefing that he prepared for the Court of Appeals.

On November 19, 2012, (after the any petition to transfer was due) Mr. Steele submitted a Request for Interview to Superintendent Knight, in which he stated, "It is an emergency that I get to the law library. This shut down is going to cost me some cases I have in Elkhart Circuit and in

the Court of Appeals." However, when he wrote to Superintendent Knight, he did not tell her specifically what his deadline was.

While the CIF Law Library was closed, Officer Johnson never received any written or oral requests from Mr. Steele concerning his need to access the Law Library or obtain a copy of the Indiana Rules of Appellate Procedure. The CIF Law Library reopened on November 26, 2012. Mr. Steele gained access on December 7, 2012.

## C. Steele's Civil Case against Menards

In March 2011, Mr. Steele sued Menards Home Improvement Store and a Menards manager ("Menards") in the Elkhart Circuit Court. Menards, in turn, asserted counterclaims against Mr. Steele. The Menards case arose from Steele's conviction for check deception after a bench trial in June 2009, which the Court of Appeals subsequently reversed and remanded due to the improper denial of Steele's jury trial request ("Memorandum Decision – Not for Publication" in *Steele v. State*, No. 20A05-0908-CR-469, Dkt. 72-7); on remand, the check deception charge was ultimately dismissed without prejudice.

In the civil case, Menards filed a Renewed Motion to Dismiss for Failure to State a Claim on September 20, 2012, a Motion for Entry of Default Judgment on September 21, 2012, and a Motion for Judgment on the Pleadings on October 12, 2012. The court held a hearing on January 14, 2013, at which both Menards' counsel and Mr. Steele gave arguments on the Motion for Judgment on the Pleadings and Motion to Dismiss; the court granted Mr. Steele a sixty-day extension of time from November 26, 2012 (the day CIF's law library reopened), within which to respond to these two motions.

Regarding Menards' motion for default on the counterclaim, the court took the matter under advisement at the hearing after both Mr. Steele and Menards' counsel gave argument on it.

Mr. Steele had time to respond—and admitted he "probably could have" responded—to the motion for default, which was deemed filed on September 21, 2012, before the Law Library at CIF closed on October 25, 2012. Eventually, both Mr. Steele and Menards agreed to dismiss their claims against each other, and the case was dismissed with prejudice; as such, the Elkhart Circuit Court never ruled on any of the pending motions.

## D. Mr. Steele's Current Location

On February 14, 2014, Mr. Steele was transferred from CIF to the Miami Correctional Facility where he is currently incarcerated.

## III. <u>DISCUSSION</u>

## A. Access-to-Courts Standard

"Prisoners have a fundamental right of access to the courts that prisons must facilitate by providing legal assistance." *In re Maxy*, 674 F.3d 658, 660 (7th Cir. 2012) (*citing Bounds .v Smith*, 430 U.S. 817 (1977)). At the same time, however, prisoners do not have an "abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Thus, to prevail on an access-to-courts claim, a prisoner must "submit evidence that he suffered actual injury—i.e., that prison officials interfered with his legal materials—and that the interference actually prejudiced him in his pending litigation." *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (citations omitted). "[T]he very point of recognizing any access claim is to provide effective vindication for a separate and distinct right to seek judicial relief for some wrong. ... [T]he right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002). In other words, "the mere denial of access to a prison library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access the courts, and only if the defendants' conduct

prejudices a potentially meritorious challenge to the prisoner's conviction [or] sentence . . . has this right been denied." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). In this case, Mr. Steele seeks redress for two specific civil actions which ended poorly. To prevail in this case, however, Mr. Steele must identify a "remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Steidl v. Fermon,* 494 F.3d 623 (7th Cir. 2007) (*citing Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002)).

## B.  Qualified Immunity

Even if Mr. Steele's right to access to the courts was violated, Defendants are entitled to qualified immunity if they did not violate his clearly established constitutional rights. Qualified immunity protects government officials from liability "when they act in a manner that they reasonably belief to be lawful." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). Put another way, government officials performing discretionary functions are entitled to qualified immunity if their conduct could reasonably have been thought consistent with the rights they are alleged to have violated. *Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006) (citing *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1013 (7th Cir. 2006)). Qualified immunity not only protects a defendant from liability, but also from the burden of standing trial. *Id.* As such, "courts should determine as early on in the proceedings as possible whether a defendant is entitled to qualified immunity." *Id.*

When presented with a qualified immunity defense, the court must first "(1) determine whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) if so, determine whether that right was clearly established at the time of the alleged violation." *Sparing v. Village of Olympia Fields*, 266 F.3d 685, 688 (7th Cir. 2001) (*citing Saucier v. Katz*, 533 U.S. 194 (2001)). Although qualified immunity is an affirmative defense, the burden of defeating an

assertion of qualified immunity rests with the plaintiff. *Id.* (*citing Spiegel v. Cortese*, 196 F. 3d 717 (7th Cir. 1999)). Accordingly, Mr. Steele bears the burden of showing that the constitutional right allegedly violated was clearly established before the defendant acted by offering either a closely analogous case or evidence that the defendant's conduct so patently violates the constitutional right that reasonable officials would know without guidance from the courts. *Gossmeyer v. McDonald*, 128 F.3d 481, 496 (7th Cir. 1997) (*citing Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993)).

The "clearly established" standard requires the contours of the right to be sufficiently clear such that a reasonable official would understand that what he is doing violates that right. *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999); *Doe v. Bobbitt*, 881 F.2d 510, 511 (7th Cir. 1989). In ascertaining whether a particular right has been "clearly established," the Seventh Circuit looks either to binding precedent from the Supreme Court or this Circuit or, in the absence of controlling authority on point, such a clear trend in the case law that the recognition of the right by a controlling precedent was merely a question of time. *Donovan v. City of Milwaukee*, 17 F.3d 944, 952 (7th Cir. 1994).

## C. Plaintiff's Motion for Partial Summary Judgment

Mr. Steele seeks summary judgment. He argues that Defendants closed the law library at CIF for over a month which blocked him from completing his post-conviction appeal and forced him to dismiss a civil complaint against Menards. First, Steele states that because he did not have access to the appellate rules, orange paper, legal copies and legal mail he could not file his transfer by November 18, 2012. Mr. Steele states that he was required to file a transfer in order to be able to later file a motion for writ of habeas corpus in federal court. Second, Mr. Steele states that he could not respond to pending motions in the civil case because the library was shut down. Mr.

Steele argues that he agreed to dismiss his complaint in order to keep the court from ruling in the defendants favor on the counter claim.

Mr. Steele is not entitled to the relief he seeks. He has simply not provided a plausible basis upon which a reasonable jury could conclude that the outcome of his post-conviction relief transfer petition or his civil case against Menards was effected by the closure of CIF's Law Library from October 25, 2012, to November 25, 2012. The Seventh Circuit Court of Appeals has recognized that "the mere denial of access to a prison library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access to the courts, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed." *Marshall*, 445 F.3d at 968. Therefore, a defendant's conduct must not just prejudice an action in some way; it must prejudice a potentially meritorious challenge to a particular kind of case.

The language and analysis the Court of Appeals used in deciding Mr. Steele's post-conviction case illustrates that he did not have a potentially meritorious claim to present to the Indiana Supreme Court. Mr. Steele's suggestion that he had an "arguable claim" because the trial judge initially granted his post-conviction petition is contradicted by the Indiana Court of Appeals' decision. Regarding his post-conviction claim, the Indiana Court of Appeals noted that Mr. Steele's challenge to his sentence was procedurally improper as it should have been challenged via a direct appeal. (Dkt. 72-4 at p. 5). Further, under Indiana law Mr. Steele was properly sentenced. *Id.* at 6-9. With this background in mind, Mr. Steele has failed to raise a plausible arguments to the contrary.

Mr. Steele's repeated claim that he is barred from ever filing a federal habeas corpus petition because he did not file a transfer to the Indiana Court of Appeals and thus has procedurally

defaulted his claims is an incomplete statement of the law. The Seventh Circuit has explained that the procedural default doctrine does not impose an absolute bar to federal relief. The doctrine is subject to equitable exceptions.

> A procedural default will bar a federal court from granting relief on a habeas claim unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, *Wainwright v. Sykes*, 433 U.S. 72, 87-88, 97 S.Ct. 2497, 2506-07, 53 L.Ed.2d 594 (1977), or, alternatively, he convinces the court that a miscarriage of justice would result if his claim were not entertained on the merits, *Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986).
>
> . . .
>
> To establish cause for his default, a petitioner ordinarily must show that some external impediment blocked him from asserting his federal claim in state court. *Carrier*, 477 U.S. at 488, 492, 106 S.Ct. at 2645, 2648. To establish prejudice, he "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982) (emphasis in original).

*Perruquet v. Briley,* 390 F.3d 505, 514-15 (7th Cir. 2004). Nothing prohibited Mr. Steele from filing a federal writ of habeas corpus arguing that his procedural default should be excused because there was cause for the default (that is the law library was closed and he was unable to file his transfer petition) and that he was prejudiced.

Assuming that a prisoner has the right to access of the courts in order to pursue a civil action unrelated to his present confinement, the claim against Menards is equally deficient. Mr. Steele has not provided a plausible basis to conclude that had the law library been open he could have obtained a more favorable result in his claims against Menards. Mr. Steele argues that his case was substantially similar to *Brewer v. Wal-Mart Stores, Inc.,* 87 F.3d 203 (7th Cir. 1996). In *Brewer,* the plaintiff convinced a jury that Wal-Mart had been negligent and had maliciously prosecuted her without probable cause under Indiana's check deception statute. *Id.* at 205. She was

ultimately awarded $40,000 in compensatory damages. *Id.* at 204. Mr. Steele argues that his case is the same except, Brewer "spent hours in jail while the plaintiff Shaun Steele spent 195 days in jail" such that he was entitled to over three million dollars. (Dkt. 86 at p. 15). But this argument misstates the record. There is no indication that Brewer spent even a day in jail. Further, in Mr. Steele's case, the Indiana Court of Appeals held that there *was* sufficient evidence to sustain his Class A misdemeanor check deception conviction but that a new trial was necessary because Mr. Steele was entitled to a jury trial. (Dkt. 72-7 at p. 3) (Emphasis added). Under these circumstances, Mr. Steele has not shown that he had a non-frivolous claim against Menards.

Mr. Steele has not met his burden of establishing that Defendants violated his constitutional right to access the court and thus he is not entitled to judgment as a matter of law. Accordingly, his motion for partial summary judgment (Dkt. 65) is **denied.**

### D. Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment because it was not clearly established at the time of the closure that merely closing the Law Library—in and of itself—constituted a denial of access to the courts. *See Marshall*, 445 F.3d at 968 (noting that mere denial of access to a prison law library is not a violation of prisoner's rights). No other actions, beyond the closure of the law library could be fairly attributed to them based on the current record. And because Steele never communicated his specific deadlines or the nature of those deadlines to either defendant—a reasonable prison official with the defendants' knowledge could have believed that the closure of the Law Library did not deny Mr. Steele access to the courts. This is particularly true where the closure was intended to be temporary and Mr. Steele retained access to his copies of the filings made in his case (although no access to his materials stored on the law library's computers). There is no evidence that Defendants believed closing the law library would prevent

inmates from having access to the courts. Importantly, Mr. Steele bears the burden of showing that the constitutional right allegedly violated was clearly established before the defendant acted by offering either a closely analogous case or evidence that the defendant's conduct so patently violates the constitutional right that reasonable officials would know without guidance from the courts. *See Gossmeyer,* 128 F.3d at 496. Mr. Steele has failed to come forward with any such evidence.[3]

Therefore, Defendants are entitled to qualified immunity on this claim.

## E. Injunctive Relief

The record reflects that Mr. Steele was transferred from CIF to Miami Correctional Facility in February 2014, where he is now located. Thus, any claim for injunctive relief is **denied as moot.** When "a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (*quoting Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988)). Because Steele was transferred to another facility—and has not shown that he is likely to be transferred back to CIF—any injunctive relief he seeks against CIF and CIF officials is therefore moot.

Similarly, the Motion for Preliminary Injunction (Dkt. 83) is **denied**. The reason for this ruling is that the relief Mr. Steele seeks (return of items from his property box) is outside the scope of the instant litigation.

---

[3] Mr. Steele argues that the closure of the library violated Indiana Department of Correction policy. Whether this is true is irrelevant. To state a claim pursuant to 42 U.S.C. § 1983, the plaintiff must demonstrate a violation of his federally secured rights, not a violation of state law or departmental policies. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

## IV. **CONCLUSION**

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Mr. Steele has not identified a genuine issue of material fact as to his claims in this case, and Defendants are entitled to judgment as a matter of law on the basis of qualified immunity. Defendants' Motion for Summary Judgment (Dkt. 72) is therefore **GRANTED**. Mr. Steele's Motion for Partial Summary Judgment (Dkt. 65) and Motion for Preliminary Injunction (Dkt. 83) are **DENIED**.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  3/16/2015

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

SHAUN L. STEELE
994225
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
BUNKER HILL, IN 46914